**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BOOKER T. EDMOND, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| vs. | )   CASE NO. 06-CV-223-FHM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
|     DEFENDANT. | ) |

## ORDER

Plaintiff, Booker T. Edmond, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d

---

[1] On February 1, 2007, Michael J. Astrue was confirmed as Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart the former Commissioner, as defendant in this case. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff's September 11, 2003 application for Disability Insurance benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held May 5, 2005. By decision dated May 27, 2005, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on March 10, 2006. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was last insured for disability insurance benefits on September 30, 2000. [R. 255]. Consequently, "to obtain disability insurance benefits, Plaintiff must establish that he became disabled on or before that date." *Washington v. Shalala*, 37 F.3d 1437, 1440 n.2 (10th Cir. 1994); *See Potter v. Secretary of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir.1990) (relevant analysis is whether claimant was actually disabled prior to the expiration of insured status).

Plaintiff was born May 7, 1947, and was 50 years old on November 30, 1997, when he alleges he became disabled. [R. 49]. He claims to have been unable to work due to stiff knees, steel plate in wrist, back pain from a lodged bullet, left rotator cuff tendonitis, fracture of his left foot and shortness of breath due to a "heart attack." [R. 59, 256-257]. The ALJ determined that Plaintiff has severe impairments consisting of chronic obstructive pulmonary disease, a cardiac disorder, a history of multiple fractures to the upper limbs including steel plate instrumentation of the wrist and a status-post gunshot wound to the back. [R. 18]. Based upon his assessment of the record, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform

a wide range of medium work, specifically: sitting 6 hours in an 8-hour workday; standing 6 hours in an 8-hour workday; walking 6 hours in an 8-hour workday; lifting up to 50 pounds occasionally and 25 pounds frequently; carrying 50 pounds occasionally and 25 pounds frequently; occasionally climbing, balancing, stooping, kneeling, crouching or crawling and no limitations on pushing and pulling. [R. 21-21].  Based upon the testimony of a vocational expert (VE) at the hearing, the ALJ found Plaintiff could not return to his heavy-exertional past relevant work but that there are a significant number of other jobs available in the economy that Plaintiff could do with his RFC.  [R.22-24].  He concluded that Plaintiff "is not entitled to a period of disability or to disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act." [R. 25].  The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ's decision is not based upon substantial evidence. Specifically, Plaintiff claims the ALJ: failed to properly assess his RFC; erred in finding Plaintiff could perform other work; and failed to properly assess Plaintiff's credibility. [Plaintiff's Brief, p. 1].  Plaintiff has withdrawn the assertion in his opening brief that the ALJ failed to adjudicate his Title XVI claim. [Plaintiff's Reply Brief, p. 1].  For the reasons discussed below, the Court reverses and remands the decision of the Commissioner for reconsideration.

## Medical Evidence

The record contains chiropractic notations from April 1996 to December 1996. [R. 89-117].  The record also contains treatment records from Scott & White Family

Medical Clinic where Plaintiff was treated for gastroenterologic problems in 1996. [R. 135-138].  Plaintiff was also seen there for allergy problems in April 1997. [R. 134].  On June 2, 1997, Plaintiff was diagnosed with right rotator cuff bursitis when he reported pain in his right shoulder after shoveling sand two weeks before. [R. 133].  On July 22, 1997, x-rays of Plaintiff's left foot revealed fractures caused by a horse falling on him. [R. 132].  On September 3, 1997, Plaintiff reported left shoulder pain which he said had been present for two to three months after shoveling wet sand at work. [R. 131].  An injection by Dr. Higgins in his right shoulder had given good relief but the left shoulder was getting worse. *Id.*  Examination revealed mild atrophy in the left post shoulder, tenderness at the biceptal groove, decreased range of motion with pain and restriction in abduction and extension rotation. Left rotator cuff tendonitis was assessed.  Plaintiff was prescribed aggressive ice treatment, motrin, shoulder exercises and advised to follow-up with Dr. Higgins in two weeks. *Id.*

On November 18, 1997, Plaintiff was seen for chest pain. [R. 129].  An EKG was reported to be abnormal. [R. 130].  Plaintiff was admitted to St. Joseph Regional Health Center to rule out myocardial infarction. [R. 207-212].  The chest x-ray was negative. [R. 210].  He was discharged the next day with a prescription for nitroglycerin, told to take aspirin every day and to follow-up with Dr. Higgins for stress testing. [R. 208].  He was also instructed to resume a low fat, low cholesterol diet and "previous activity."[3]

Plaintiff claims his disability commenced November 30, 1997. [R. 49].  The first medical record after that date is a report of negative portable chest x-ray and some

---

[3] Upon admission, Plaintiff was noted to be working as a caretaker for animals at Texas A&M and as a rodeo horse trainer. [R. 207].

blood lab work from St. Joseph Regional Health Center on January 23, 1998. [R. 213-216]. Plaintiff returned to Scott & White Family Medicine on February 2, 1998, for follow-up. [R. 128]. He was referred for an exercise stress test (EST). *Id.* On April 6, 1998, Plaintiff was again seen for chest pain and was rescheduled for the stress test "since he missed his previous one." [R. 127]. The Treadmill Exercise Stress Test Report revealed abnormal results but minimal criteria. [R. 126]. Plaintiff was advised to quit cigarettes, start a walking program and to repeat the EST in one year. *Id.* On June 19, 1998, Plaintiff asked his physician to complete forms for him to return to work. [R. 125]. The doctor noted "chest pain resolved" and tobacco abuse. *Id.*

There is no medical evidence in the record for the remaining time period between June 1998 and September 30, 2000, the date Plaintiff's insured status expired.

Plaintiff suffered a fracture of his left wrist when a horse fell on it in May 2003 for which he underwent surgery. [R. 140-164]. In 2004, a Pulmonary Function Test revealed a moderate obstructive lung defect. [R. 193-196]. Plaintiff was awarded disability benefits under Title XVI (SSI) effective October 1, 2003. [Plaintiff's Reply Brief, p. 1].

### The ALJ's Decision

In setting out the issues to be resolved, the ALJ noted that Plaintiff was receiving Title XVI benefits and that the claim under consideration "regards whether or not [Plaintiff] was disabled on or before the expiration of his date last insured and therefore eligible for Title II benefits." [R. 17]. Unfortunately, the ALJ did not focus on the relevant time period when he set forth his findings at step two and he omitted any reference to the relevant period for his findings at subsequent steps in his decision. [R. 18-24].

Although the ALJ's description of the medical evidence in his written decision reflects that he evaluated it for "the time period in question" and he discussed Plaintiff's "major concerns during the time period in question" in the body of his decision, he identified chronic obstructive pulmonary disease (COPD) and a history of multiple fractures to the upper limbs including steel plate instrumentation of the wrist as severe impairments at step two. [R. 18]. Plaintiff's wrist fracture occurred in May 2003 and the pulmonary function tests indicating COPD were conducted in May 2004, both well after the expiration of Plaintiff's insured status on September 30, 2000. This error and the concluding paragraph in the ALJ's decision indicating that both Plaintiff's SSI and DIB cases were denied resulted in Plaintiff's confusion regarding the claims he needed to appeal.

The RFC assessed by the ALJ was written in the present tense and it is impossible to ascertain whether those RFC findings were meant to apply to the period prior to September 30, 2000, or the date of the decision. Even though the ALJ apparently reviewed the medical evidence for the "time period in question" there is no indication that the ALJ first eliminated the wrist injury and COPD as severe impairments at step two, before evaluating Plaintiff's RFC based upon limitations imposed by "a cardiac disorder" and "a status-post gunshot wound to the back," the two remaining impairments in the step two determination.

Defendant asserts the ALJ "correctly determined that Plaintiff's alleged cardiac and left arm impairments did not cause additional limitations that he should have included in his RFC finding." [Defendant's brief, p. 4-5]. However, the ALJ's written decision makes no such distinction between the impairments and indeed, the ALJ did

not identify a left arm impairment relating to shoulder tendonitis which was the condition that existed prior to September 30, 2000. Although the ALJ appeared to discount Plaintiff's alleged symptoms and limitations based upon inconsistencies in the medical record, he must have accepted some portion of Plaintiff's testimony because he determined Plaintiff had met his burden at step four to prove that he could no longer perform his past relevant work (PRW). If the Court were to assume the ALJ concluded that Plaintiff's alleged cardiac and left arm impairment did not cause additional limitations to include in the RFC as argued by Defendant, it would also have to assume the ALJ found those impairments to be not severe at step two. This would negate the ALJ's finding that Plaintiff had met his step four burden of proof that he could not perform his past relevant work because of severe impairments.

The Court is not permitted to draw factual conclusions on behalf of the ALJ. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir.2001) (that the record contains evidence that may support a specific factual finding cannot substitute for the finding itself). Nor may the Court create *post-hoc* rationalizations to explain the treatment of evidence when that treatment is not apparent from the Commissioner's decision itself. *See, e.g., Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.2004); *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943). And, as the Court has acknowledged, it does not reweigh the evidence. *Hackett*, 395 F.3d at 1172.

The ALJ did not specify at step two what impairments he found were severe before September 30, 2000. His findings at subsequent evaluative steps, including the RFC assessment, include limitations for impairments that did not exist during the relevant time period. The Court cannot bridge the logical inconsistencies in the ALJ's

7

decision. Therefore, the decision must be remanded to the Commissioner for reconsideration.

## Conclusion

When rendering a decision, an ALJ is required to consider the totality of the circumstances and articulate his considerations for the record. See *Winfrey v. Chater*, 92 F.3d 1017, 1020-21 (10th Cir. 1996). His failure to do so, and to show that he has done so, is grounds for reversal. *Id.* Accordingly, the decision of the Commissioner finding Plaintiff not disabled is REVERSED and REMANDED to the Commissioner for reconsideration. In remanding this case, the Court does not suggest that the record is incomplete, nor dictate any result, but does so simply to assure that the correct legal standards are invoked in reaching a decision based on the facts of this case. *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

SO ORDERED this 15th day of May, 2007.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE